# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KOFI EASTERLING,

          Plaintiff,

    v.                                                       Case No. 08-C-295

WARDEN WILLIAM POLLARD,
MRS. CUMMINGS, and MARK ZIMONICK,

          Defendants.

## DECISION AND ORDER

        The plaintiff, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He was granted leave to proceed *in forma pauperis* on an Eighth Amendment conditions of confinement claim based on certain conditions he was allegedly subjected to while incarcerated at the Green Bay Correctional Institution. The defendants have filed a motion for summary judgment, which will be addressed herein.

        The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

## SUMMARY JUDGMENT STANDARD

        Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. *Celotex Corp.*, 477 U.S. at 323. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."); *Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."). "Rule 56(c) mandates the entry of summary judgment . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

# FACTUAL BACKGROUND

## 1. Easterling's Complaint[1]

Easterling avers:

I'm currently housed in segregation. I'm being exposed to the extreme behavior of severely mentally ill prisoners. I'm exposed to constant screaming and feces-smearing of mentally ill prisoners, which has contributed to problems of uncleanliness and sleep deprivation, and by extension [sic] mental health problems, for other inmates, and myself.

The first week of February 2008, I was forced into a[n] unclean cell in segregation, which the previous occupant of the cell had smeared human waste (feces and urine) all over the inside of the cell. I requested to be removed from the unclean, health hazardous cell but was denied and forced by the administration to clean up another inmate[']s human waste without gloves and chemicals which endangered my health. (24) hours a day mentally ill prisoners, scream, throw feces and loudly beat on their walls and doors. This unsafe disruptive behavior is ignored by the administration, even though this disruptive behavior harms other inmates.

(Compl. ¶ IV. A.)

## 2. Defendants' Proposed Findings of Fact

Easterling was incarcerated at Green Bay Correctional Institution ("GBCI") at all times relevant to this action. Defendant Maleah Cummings ("Cummings") is employed as a psychologist at GBCI and her duties include providing mental health services to offenders, as well as providing psychological consultation services to institution administration, designated review committees, consulting psychiatrists, and other institution and field staff involved in planning the total program of a given offender. Defendant Mark Zimonick ("Zimonick") is employed as a social worker at GBCI. His duties include assessing inmate problems, formulating case plans, monitoring inmates'

---

[1] Easterling has not submitted affidavits, or other materials that would be admissible in evidence, in response to the defendants' motion for summary judgment. *See* Fed. R. Civ. P. 56(e). However, the complaint is sworn and the court may consider it as an affidavit at the summary judgment stage. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

progress, providing counseling, and developing and referring inmates to appropriate institution and community resources upon transfer or release.

Neither Cummings nor Zimonick have any personal recollection of Easterling making any complaints to them with respect to the alleged conditions of his cell or about mentally ill noisy inmates. However, Cummings does recall Easterling making several complaints including his desire to be sent back to Wisconsin Secure Program Facility, issues with the specifics of his mandatory release date, beliefs that administration was out to kill him, beliefs that he was being harassed because he is African American, and several requests for a single cell because of concerns about harming another inmate due to his self report of "violent impulses" and vague threats to harm other inmates if placed in a double cell. If Easterling felt that the conditions of segregation were affecting his mental health, he could have contacted Zimonick so that he could have spoken with Zimonick, who could have re-evaluated his needs. If Easterling felt that the conditions of his segregated status were contributing to sleep disturbance and uncleanliness, he could have contacted Cummings or Zimonick regarding these concerns, as he did with the complaints noted above. Cummings or Zimonick would have then passed this information on to the security officers who address such complaints pursuant to GBCI policy and procedure. However, Easterling did not do this; therefore, neither Cummings nor Zimonick had any knowledge of these concerns.

Lieutenant William Swiekatowski ("Swiekatowski") is employed as a Supervising Officer 1 at GBCI. His duties include the security, custody and control of inmates at GBCI, and he supervises correctional officers and correctional sergeants. At all times relevant to this matter, Easterling was housed in segregation where Swiekatowski was stationed.

In late February of 2008, Swiekatowski was contacted by the GBCI Inmate Complaint Examiner regarding offender complaint GBCI-2008-6134 in which Easterling complained that there

4

were not adequate cleaning supplies for him. The Inmate Complaint Examiner investigated this complaint, and Easterling was informed that inmates are afforded cleaning supplies as they are available and it was determined that inmates do have access to cleaning supplies, including rags and disinfectant. Swiekatowski has no recollection of Easterling complaining to him or his officers directly about the unsanitary conditions of his cell. If he had become aware of such conditions, the problem would have been addressed immediately by having one of his security officers provide Easterling with cleaning supplies to clean his cell. If the cell contained feces or urine, Swiekatowski would have removed Easterling from his cell and transferred him to a different cell and had the janitors clean it with a pressure sprayer and A-33, a disinfectant that kills germs and viruses on contact. The janitors are outfitted with "Personal Protective Equipment," which is similar to a traditional white "haz-mat" suit and gloves. When an inmate vacates a cell in segregation at GBCI, a "dirty" tag is placed on the door until the segregation janitor is available to clean the cell. Once the cell has been cleaned and security staff inspect it, an "empty" tag is placed on the door indicating that the cell is empty and available. This procedure is followed prior to any inmate being placed into a new cell.

Swiekatowski oversaw the GBCI segregation for over four years and has never had a segregation inmate clean their own cell if it contained feces or any other bio-hazardous waste. Inmates in segregation are routinely given rags, spray bottles, brooms, and dustpans for periodic cleaning, but if human waste is found in the cell, the inmates are removed from the cells and a janitor is called to clean it.

Swiekatowski also understands that Easterling is alleging that the inmates in segregation are too noisy and disruptive. Generally, inmates who are housed in segregation have shown a blatant disregard for authority and/or rules and as such are more difficult to control and supervise. GBCI

is bound by the disciplinary guidelines of the Wisconsin Administrative Code so, although conduct reports are issued, this does not always curb the behavior of many inmates. Typically, the increase in noise level in segregation goes for short periods of time, usually about one hour. Based on Swiekatowski's experience, the noise level has not been so excessive so as to cause other inmates to not be able to sleep. GBCI has a Health and Safety committee that does routine inspections to ensure compliance with OSHA and other safety regulations. As a part of this process, the committee routinely takes decibel readings on the unit and records those readings in its report. Swiekatowski has reviewed the GBCI Health and Safety committee decibel reports and these reports indicate that the noise levels in segregation were within normal limits.

If a non-security staff member, such as a psychiatrist or social worker, received complaints from Easterling, their only authority would have been to report it to the unit sergeant or a higher ranking officer at the time. To Swiekatowski's knowledge, he never received from defendants Cummings or Zimonick any reports of Easterling complaining about his segregation cell being dirty or that segregation was too noisy.

Defendant William Pollard ("Pollard") is employed as Warden of GBCI. He is responsible for the overall administration and operation of GBCI. Pollard has the responsibility at the institution level for implementing all DOC policies and directives, and legislative and judicial mandates. Although Pollard has general supervisory authority over GBCI operations as provided in the Wisconsin Statutes, he does not supervise the day-to-day operations of security personnel within GBCI. Pollard has no personal recollection of Easterling himself or any complaints that he may have brought with respect to the alleged conditions of his cell.

However, Pollard has reviewed Offender Complaint GBCI-2008-6133 wherein Easterling complained about mentally ill inmates who scream and smear feces in segregation. This complaint

was investigated by the Inmate Complaint Examiner who informed Easterling that the inmates who are housed in segregation have shown a blatant disregard for authority and/or rules and as such are more difficult to control and supervise. Easterling was further advised that the administration is bound by the disciplinary guidelines of the Wisconsin Administrative Code so, although conduct reports are issued, this does not always curb the behavior of many inmates. Pollard also reviewed Offender Complaint GBCI-2008-6134 wherein Easterling complained that there were not adequate cleaning supplies for him. As discussed previously, this complaint was also investigated by the Inmate Complaint Examiner, and Easterling was informed that inmates are afforded cleaning supplies as they are available and it was determined that inmates do have access to cleaning supplies, including rags and disinfectant.

Pollard has no recollection whatsoever of Easterling complaining to him directly about the unsanitary conditions of his cell. If he had become aware of such conditions, Pollard would have addressed the problem immediately by having one of his security officers provide Easterling with cleaning supplies to clean his cell. Pollard has no knowledge of Easterling complaining about unsanitary conditions in his cell and noisy inmates other than the offender complaints he reviewed.

**ANALYSIS**

The defendants contend that (1) Easterling cannot maintain a claim based upon constant screaming by fellow segregation inmates; (2) Easterling's alleged brief detention in an unclean cell is insufficient to establish an Eighth Amendment violation; (3) Easterling's allegation that he was given insufficient cleaning supplies does not rise to a violation of his constitutional rights; and (4) even if Easterling was subjected to all the conditions of confinement as alleged, the named defendants were not aware of, and two of the three defendants had no control over, Easterling's complaints regarding the conditions of confinement.

7

Easterling filed two memoranda in response to the defendants' motion for summary judgment.[2] Both are unsworn and, for the most part, contain assertions purporting to dispute the defendants' proposed findings of fact. For example, Easterling asserts that his residence in the segregation cell was not temporary but rather that he was forced to reside in the same cell, with all of its dirt, germs, and fecal matter/human waste, for six months, until he was released from segregation. He further asserts that he was forced into the unclean cell just minutes after the previous inmate was removed and that he was forced to clean the previous inmate's human waste from the entire room without adequate cleaning supplies, respirator, or gloves. Easterling states that he made a direct request to Swiekatowski to be removed from the cell and that, in response, Swiekatowski gave him a 3 x 3 inch rag and a cup of some water-down chemical to clean up the human waste. Easterling asserts that both defendants Cummings and Zimonick witnessed the human feces smeared all over the cell walls and also smelled the stench of the human waste.

With respect to the noise level claim, Easterling asserts that the defendants admit in their affidavits that inmates in segregation show a blatant disregard for the rules, especially the noise rule, and that therefore the defendants cannot claim that his exposure to the disruptive conduct did not affect him. Easterling states that these mentally disturbed inmates kick on their cell doors, scream at the top of their voices, and that some cut themselves twenty-four hours a day. Easterling further states that only six hours a day of sleep can cause sleep deprivation and a mental meltdown in inmates. According to Easterling, all defendants had full knowledge of this situation but failed to follow protocol to protect his mental and physical health, in violation of the Eighth Amendment.

---

[2] The response briefs are titled "Motion to Oppose (Refute) Defendants' Motion for Summary Judgment" and "Motion: to rule in plaintiff's favor and grant damages to plaintiff, in its entirety as clearly outlined in Case No. 08-C-295."

As indicated, Easterling's responses are not sworn. Thus, these assertions cannot be used to dispute the defendants' facts and, therefore, the court will not consider them. *See* Fed. R. Civ. P. 56(e) ("supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated").

**1. Noise**

Continuous, excessive noise may rise to the level of an unconstitutional condition of confinement. *See Sanders v. Sheahan*, 198 F.3d 626, 628 (7th Cir.1999); *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir.1996). The pretrial detainee in *Antonelli* alleged that "the noise occurred every night, often all night, interrupting or preventing his sleep," which was sufficient to overcome a motion to dismiss. *Antonelli*, 81 F.3d at 1433. However, an allegation of only "a few hours of periodic loud noises that merely annoy[ed], rather than injure[d]" a prisoner does not state a claim of an unconstitutional condition. *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir.1994).

Easterling avers that in segregation at GBCI, he is "exposed to constant screaming and feces-smearing of mentally ill prisoners, which has contributed to problems of uncleanliness and sleep deprivation[.]" (Compl. ¶ IV.A.) The defendants submitted evidence that, while inmates in segregation tend to be disruptive and that conduct reports to curb unruly behavior are not always effective, typically any increase in noise levels in segregation goes for no more than an hour. Defendant Swiekatowski, who oversaw the GBCI segregation unit for four years, avers that in his experience the noise level has not been so excessive that it has caused other inmates to not be able to sleep. In addition, GBCI's Health and Safety Committee conducts decibel readings on the unit and, based on Swiekatowski's review of those reports, the noise levels within segregation were within normal limits.

To implicate the Constitution, the risk of injury due to the noise conditions must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Easterling's speculative and unsupported assertions fall far below this standard, and are insufficient to withstand defendants' motion for summary judgment. *See Lunsford*, 17 F.3d at 1580 (affirming summary judgment for prison officials who allegedly subjected prisoners to loud noises over an intercom during a 24-hour period; "[t]he record contains no evidence that the noise levels posed a serious risk of injury to the plaintiffs"); *Murphy v. Dowd*, 975 F.2d 435, 437 (8th Cir. 1992) (per curiam) (affirming judgment for prison officials, finding excessive noise claim was meritless); *Givens v. Jones*, 900 F.2d 1229, 1234 (8th Cir. 1990) (affirming summary judgment for prison officials in suit alleging excessive noise caused by remodeling in prison; court finds noise is "a fact of life" and that the claim "on its face appears almost specious"; inmate failed to claim the noise was result of malicious intent or even reckless disregard for his well-being); *Peterkin v. Jeffes*, 855 F.2d 1021, 1027 (3d Cir. 1988) ("the noise in the cells, while it may be irritating to some prisoners, cannot fairly be said to inflict cruel and unusual punishment").

Easterling's conclusory averment that he was exposed to "constant screaming," without more, is insufficient to withstand summary judgment. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (citing *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998)). Accordingly, this record cannot support a finding that Easterling was exposed to noise levels that posed a serious risk of injury in violation of the Constitution.

## 2. Cell Conditions

To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the

injury with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Only extreme deprivations will support an Eighth Amendment claim. *See Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. *See Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997). There is no requirement that prison cells be comfortable or pleasant. *See Morissette v. Peters*, 45 F.3d 1119, 1122-23 n.6 (7th Cir. 1995) (plaintiff's confinement in "filthy" cell for nine days without adequate cleaning supplies did not violate Eighth Amendment); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (no constitutional violation found where prisoner was deprived of toilet paper, soap, toothpaste and toothbrush while being kept in a filthy, roach infested cell for a period of several days). However, the Eighth Amendment grants prisoners a right to the "minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), which includes the right to sanitary conditions. *DeMallory v. Cullen*, 855 F.2d 442, 445 (7th Cir. 1988).

The plaintiff avers that he was forced into an unclean cell in segregation which contained feces and urine smeared on the cell walls. His request to be moved from the cell was denied. Instead, he was given cleaning supplies to clean the cell walls.

"Not surprisingly, human waste has been considered particularly offensive so that courts have been especially cautious about condoning conditions that include an inmate's proximity to it." *McBride v. Deer*, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990)). In *Johnson v. Pelker*, 891 F.2d 136, 140 (7th Cir. 1989), for instance, the court found a lack of running water in a segregation cell for three days actionable because the inmate was thus unable to clean cell walls smeared with human feces. Although no single factor is dispositive, "the length of exposure to the conditions is often of prime importance." *DeSpain v. Uphoff*, 264 F.3d

11

965 (10th Cir. 2001) (holding that exposure to human waste for thirty-six hours due to flooding conditions was a sufficiently serious deprivation to violate the Eighth Amendment).

Deliberate indifference is a subjective factor, requiring facts that indicate not only the conduct but also the attitude of prison authorities. *See Helling v. McKinney*, 509 U.S. 25 (1993); *see also Vinning-El v. Long*, 482 F.3d 923, 925 (7th Cir. 2007) ("Given the conditions Vinning-El describes-a floor covered with water, a broken toilet, feces and blood smeared along the wall, and no mattress to sleep on-a reasonable jury could infer that prison guards working in the vicinity necessarily would have known about the condition of the segregation cells"). An inmate challenging a condition of his confinement under the Eighth Amendment must show that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. This requires direct, personal involvement under *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.*

In this case, the undisputed facts do not support a finding that Easterling was subjected to a sufficiently serious deprivation to implicate the Constitution. According to Easterling, he arrived in his cell, the walls were dirty, he complained, and he was given cleaning supplies including chemicals to clean the wall. Even if these allegations did implicate the Constitution, due to the seriousness of exposure to human waste, the record does not support a finding that any named defendant was deliberately indifferent because there is no indication that any named defendant had personal involvement in Easterling's placement in the cell, or his retention there.

## ADDITIONAL MATTER

Easterling filed a request for a temporary restraining order against all defendants, alleging retaliation by GBCI administration based on this lawsuit. He asserts that he is being "denied adequate health care and other simple civil remedies of this institution" and that he is subject to unlawful intimidation and threatened with "illegal segregation."

The standards for a temporary restraining order and preliminary injunction are identical. The applicant has the burden of showing the following: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm if injunctive relief is denied. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). If the petitioner satisfies the initial three-step burden, the court must balance the irreparable harm to the nonmoving party if the injunction is granted against the irreparable harm to the moving party if the injunction is denied. *Id.* The court also must consider the effect of the injunction on nonparties. *Id.*

Easterling cannot satisfy the standard for a temporary restraining order, as this action is being dismissed.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket #45) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for order (Docket #55) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for temporary restraining order (Docket #63) be and hereby is **DENIED**; and

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

**SO ORDERED** this 5th day of March, 2010, at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
